ABRAHAM L. ERLANGER, Respondent, *v.* MARC KLAW, Appellant.

First Department, May 2, 1924.

Partnership — action for accounting — finding of oral agreement by defendant to pay plaintiff five per cent on excess of plaintiff's capital invested over defendant's investment is supported by evidence — conduct of parties in relation to payment of interest is evidence of agreement — not improper to exclude defendant's reason for not insisting that charge of interest was illegal.

In an action for an accounting between partners following the dissolution of the partnership by mutual consent, the evidence supports the finding by the court of an oral agreement by the defendant to pay personally to the plaintiff five per cent yearly on the excess of the plaintiff's capital invested in the partnership business over that of the defendant's.

The conduct of the plaintiff over a period of years in charging five per cent to the defendant's personal account and that of the defendant in not protesting against the charge is evidence of the existence of the agreement in support of the plaintiff's testimony that such an agreement was made.

It was a harmless error, if any error at all, for the court to exclude testimony on the part of the defendant tending to show his reason for not objecting to the interest charge which was made each year and charged to him personally.

APPEAL by the defendant, Marc Klaw, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of July, 1923, upon the decision of the court rendered after a trial at the New York Trial Term without a jury.

*Rounds, Schurman & Dwight* [*Charles E. Hughes, Jr.,* of counsel; *Arthur C. Rounds* and *Alfred M. Lindau* with him on the brief], for the appellant.

*Nathan L. Miller* [*Nathan D. Stern* with him on the brief], for the respondent.

McAVOY, J.:

The plaintiff was awarded an interlocutory judgment for an accounting between himself and the defendant, after dissolution of their partnership by mutual consent. There is no appeal from so much of the interlocutory judgment as directs the taking and stating the account of the partnership before a referee, but the appeal lies from a direction in the judgment that in the adjustment and settlement of the copartnership accounts plaintiff should be credited and the defendant should be personally charged each fiscal year from July 1, 1903, with five per cent interest on the amount of the plaintiff's capital invested in the business in excess of that of

the defendant at the close of the preceding year. The appeal also runs against the allowance of any costs in the action.

Plaintiff's claim arises upon an oral agreement with the defendant made in 1903 personally to pay him five per cent interest on the amount of plaintiff's capital invested in the business in so far as it exceeded the invested capital of the defendant, and defendant agreed at that time, according to plaintiff's testimony, that the interest should be charged to the defendant personally, and credited to the plaintiff on the books of the copartnership.

The defendant asks that we reverse the finding of the learned trial court and make new findings that no such agreement was made, and modify the interlocutory judgment in that respect, and it is urged that, if the demand to modify the judgment by striking out the finding that there was no such agreement made be refused, a new trial on account of errors in admission and exclusion of evidence should be granted.

The parties were associated as members in the theatrical business for over twenty-five years. In May, 1918, while the defendant was in California, plaintiff discharged Joseph Klaw, the son of the defendant. The defendant says that the son was discharged because of his objection to charging this interest on plaintiff's excess of capital, about which this controversy hinges, against defendant personally, instead of charging it against the firm. Thereafter, and because of the defendant's son's discharge, counsel was retained by defendant, and he gave notice eventually of his wish to discontinue the partnership. Six months after this break over Joseph Klaw, defendant gave notice that the partnership accounts for a period of fourteen years should be " corrected " by charging against the firm instead of against defendant individually a sum amounting to over $375,000, which represented the interest on plaintiff's excess of capital over defendant's contribution.

The partners began their connection in 1889 for five years. They operated under a written agreement, and thereafter the partnership was one at will subject to the terms of the written agreement which had expired. The partnership was terminated by mutual consent as of June 30, 1919. There was no provision in writing in the articles of copartnership for the payment of interest on capital contributions. The partnership books give no such evidence of any interest having been paid until after the year 1903.

Plaintiff's interest in the capital of the firm of that year had come to exceed that of the defendant by over $145,000. Plaintiff's testimony is that in that year, shortly before June thirtieth, the end of the fiscal year, he called the fact of this excess of capital contributed by him to defendant's attention, and that at that time

the oral contract was made for the payment of five per cent interest at the end of each fiscal year on plaintiff's excess capital as it stood at the end of the previous fiscal year. The excess capital was said to mean the amount by which plaintiff's interest in the capital of the business exceeded that of the defendant. The further testimony of plaintiff is, that after the contract was made, the firm auditor was called into the presence of both partners and told by defendant the terms of the contract. He was then directed to instruct the bookkeeper about this arrangement that the partners had effected. The auditor is dead.

The bookkeeper says that the auditor called him in, and after a conversation with him made entries in the ledger charging defendant's personal drawing account and crediting plaintiff's personal account with five per cent interest on the amount of plaintiff's excess capital as of July 1, 1903. Thereafter, and until 1918, interest was charged in this manner to defendant personally and credited to plaintiff at times, and at other times paid to him by checks. Annually the amount so charged and credited, and sometimes paid, varied from $7,500 to $46,000, and aggregated $375,000 between the years 1904 and 1917. Annual and monthly statements showing these sums charged against defendant were rendered to the partners and received by defendant.

It is plaintiff's testimony that defendant did not make objection nor attempt to stop the payment of this interest to him until after the break in May, 1918.

The testimony of defendant is, that there was no such agreement in regard to plaintiff's interest on excess capital. He claims that the entries on the partnership books charging him with interest thereon are erroneous, because the capital should bear no interest, either to be paid by the firm or to be paid by him without an express contract to pay such interest.

On the argument, counsel for the defendant asserted that, in view of the position which the defendant had taken throughout the controversy over this item of interest, it was not now contended, regardless of the right to so contend, that the firm could not be charged with interest, the objection to the interest charged being now confined solely to its debit against defendant personally.

Although defendant made denial of the making of the contract in his examination before trial, yet he testified that they had a conversation the first time interest was put on, and that it was to be five per cent. Defendant claims that plaintiff did not tell him that defendant personally was paying it. The first time that interest was so charged was in 1904. There is no doubt from defendant's testimony, although he retracts in places the earlier

statement that he knew of the charge in 1904, that he became aware of the nature of the charge, and that it was a personal one in 1908. Three times thereafter he spoke to the plaintiff about it and in those conversations he merely asked if plaintiff thought it was a fair charge and said that it did not seem so to him. He admits that for fourteen years he never gave any direction to have the charge stopped, and he explains this by stating that plaintiff assured him the matter would be adjusted if it were not right, and that he relied on this assurance, although he believed plaintiff sincere in his claim that it was a fair charge.

One Golding testified that when acting as auditor for the firm in June, 1917, he explained to defendant an apparent duplication of capital interest items charged on a current statement of defendant's drawings, and that defendant accepted the explanation without comment. Defendant claims not to recall this occurrence. Aarons, who acted between these contentious partners after the break, testified that defendant said upon learning of the restriction against any further withdrawals by him: " I see no reason why Mr. Erlanger should refuse to do this. I·have been paying him five per cent interest on his money for years and am doing so now." Defendant admits a conversation with Aarons, but denies that this was the nature of the talk.

Joseph Klaw, whose discharge brought about the disagreement and the ultimate dissolution, testified that he had objected to this interest charge in conversations with plaintiff, as being contrary to proper accounting practice. Joseph Klaw was employed as an auditor by the firm. He never claimed to have made this statement on his father's behalf. He states that when he asked plaintiff about the bookkeeping procedure in respect to this item of interest, he was referred to the books, and was informed that Aaron Klaw, David Gerber and Robert R. Moore had told plaintiff that the system was proper; that defendant could not get his money for less elsewhere, and that he (plaintiff) was right, but that if the charge should be wrong, it could be fixed.

The witness Casey testified for defendant that plaintiff had said to him, referring to the interest question: " Well, old pal, that is a matter where Marc [the defendant] thinks he is right and I think I am right, but you know well enough whatever it is it will all be straightened out."

This constitutes the substance of the oral testimony. The rest of the proof consisted of the book entries, the partnership statements and the interest checks.

Casey could not give the exact date of his conversation, but to the best of his recollection it occurred in 1909 or 1910, or it might have

been 1911. It was also shown that Casey had had a disagreement with plaintiff and had testified in a suit brought against Erlanger by a woman in 1917.

This proof seems to us to raise a pure question of fact, which being resolvable by the trial court in much more facile mode than we can determine it from the record, the ruling there ought not to be revoked in the absence of substantial error which may be said surely to have affected it.

Defendant's reliance is on the assertion that whilst the conduct of the parties, book entries, actual payment of interest and knowledge of the defendant may be proved as evidence, such evidence is of no consequence in determining the fact of the agreement, which must be established by other and independent evidence.

Defendant, in effect, says that conduct may be proven, but that the evidence of conduct cannot be considered in determining whether an agreement was made; that such a finding must be adjudged from the plaintiff's testimony alone, independently of the conduct of the parties, and upon accepting this premise of defendant, it follows that plaintiff's testimony being unreliable and disputed by the defendant, it is insufficient to sustain the burden of proof. We regard this argument as not founded in the logic of evidence. The conduct of the parties and the receipt of statements showing a contested charge and the payment of checks therefor, some signed by the defendant himself, are very highly probative of the correctness of a disputed item.

We are agreed that on the facts we cannot disturb the judgment.

The only other question of substance is as to whether the exclusion of evidence by the learned trial court prevented defendant from giving an explanation of why he had not stopped the practice of charging interest and paying it to plaintiff on his excess capital accounts.

We look upon this as a harmless error, if indeed it be error at all. Defendant had testified to what he claimed to have said or done in regard to the interest matter, about his knowledge of it and to plaintiff's statement to him in regard to it. He said that although he and plaintiff were very friendly, it was necessary to use tact in dealing with him; that he could not have ordered the financial department to charge interest to the firm because plaintiff would not have stood for it, and that when he realized the impropriety of the charge he questioned it mildly, and fearing to insist at the time, was satisfied to rely on plaintiff's alleged statements that if it were wrong it would be adjusted. The basic contention of defendant was that he relied on plaintiff's assurances of adjustment, and this contention was reflected in his witnesses' testimony. What-

ever other restraint he was under in correcting the accounts, he was not prohibited from disclosing. Defendant on this appeal asserts and would have us find that his testimony that no agreement for the payment of interest on excess capital was ever made, and his explanation of his failure to stop the payment of such interest to plaintiff was adequate and convincing. In effect, that more proof is not needful. The inward intentions of defendant, no matter what they were during this long period of accounting, cannot now affect plaintiff's right. Mental reservations not communicated to his partner during this period whilst charges were being made against him and annually paid or credited could not affect the rights of his partner arising from the plain implications of conduct to which but one inference ought to be ascribed if we adopt the standards of ordinary usage in such matters.

We think that the judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment affirmed, with costs.